UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARL L. BARRETT,

        Plaintiff,

      v.                             Case No. 23-C-138

MONTREL BRIDGES, RACHEL MATUSHAK,
CO SPENCER, SGT. GREGORY FRIEDEL,
MICHAEL NEVEU, and JAY VANLANAN,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Carl Barrett, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Barrett's motion for preliminary injunction and to screen the amended complaint.

### SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Barrett explains that on August 24, 2022, he was feeling suicidal. He asserts that at about 10:30 a.m., he pressed his emergency call button to inform Defendant Michael Neveu that he needed to speak to psychological services because he was feeling suicidal, but Neveu repeatedly ignored his calls. About an hour later, Barrett allegedly alerted Defendant Spencer[1] that he was feeling suicidal, had access to psychiatric clonidine pills, and needed to speak to psychological services immediately. Barrett also asserts that he asked Spencer to send the range officer immediately because he was having a psychological emergency. Dkt. No. 23 at 8.

Barrett states that about half an hour later, at 12:10 p.m., Defendant Montrel Bridges came to his cell door, and Barrett told him he was suicidal and had pills. Bridges told Barrett that he would inform Defendant Sgt. Gregory Friedel. About fifteen minutes later, Friedel came to Barrett's cell. Barrett states that he informed Friedel he was suicidal, had pills, and needed to see psychological services. According to Barrett, Friedel told him that he would not call psychological services because "it didn't work like that." Barrett asserts that Friedel then walked away. Shortly thereafter, Bridges returned to Barrett's cell. According to Barrett, he repeated that he was feeling suicidal and had pills. Barrett states that Bridges told him that he had informed Friedel and that he cannot make the sergeant call psychological services. Bridges then allegedly walked away. Dkt. No. 23 at 9.

Barrett explains that by 2:46 p.m. he still had not spoken to anyone from psychological services. He states that Friedel kept trying to talk to him as though he was a clinician, but he has no training in psychology. Barrett asserts that he told him he would talk about his suicidal ideation

---

[1] In the caption of his amended complaint, Barrett names "C/O Spence," but throughout the amended complaint, he refers to "Spencer."

2

only with psychological services. Barrett states that Friedel continued to refuse to inform psychological services that Barrett had pills and was suicidal. Dkt. No. 23 at 10.

According to Barrett, at about 3:09 p.m., Defendant Nurse Rachel Matushak came to his cell, and he told her that he was suicidal and he showed her that he had about forty clonidine pills. Barrett asserts that once she saw the pills, "she immediately ran away from [his] door." Bridges allegedly came to his cell about a half an hour later. Barrett asserts that he again said he was not going to call psychological services. According to Barrett, he then swallowed the forty clonidine pills in front of Bridges. It is not clear exactly when, but Barrett asserts that Defendant Captain Jay VanLanan also had been informed that Barrett was suicidal. Barrett asserts that VanLanan told him he did not care and was tired of playing with him. Barrett also asserts that after he swallowed the pills, VanLanan told Nurse Matushak not to be in a rush to send him to the hospital. Dkt. No. 23 at 10-11.

Barrett explains that, after he took the pills, someone from psychological services came to talk to him. He states that at about 8:30 p.m., nearly five hours after he took the pills, he was admitted to the hospital, where he received treatment for several days. Barrett asserts that he experienced chest pains, difficulty breathing, dizziness, and terrible stomach pains. Dkt. No. 23 at 12.

### THE COURT'S ANALYSIS

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes preventing inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. Cty. of*

3

*Madison*, 746 F.3d 766, 775-76 (7th Cir. 2014). To state a claim under the Eighth Amendment, a plaintiff must allege that: "(1) the harm that befell [him was] objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760–61 (7th Cir. 2006) (citations omitted).

Barrett may proceed on an Eighth Amendment claim against Neveu based on allegations that, in response to Barrett repeatedly pressing his emergency call button, Neveu merely clicked the intercom on and off thereby preventing Barrett from reporting that he had suicidal feelings and the means to act upon those feelings. He also states an Eighth Amendment claim against Bridges, Spencer, Friedel, Matushak, and VanLanan based on allegations that, despite him informing them that he felt suicidal and had forty clonidine pills that he intended to swallow, none of them contacted psychological services or apparently made any other efforts to keep him safe from himself. Finally, Barrett may proceed on an Eighth Amendment claim against VanLanan and Matushak based on allegations that, despite knowing he had swallowed forty clonidine pills, they delayed sending him to the hospital for nearly five hours. To prevail on this claim, Barrett will have to show that he was harmed by the delay, but his allegations are sufficient at this stage to state a claim.

## MOTION FOR A PRELIMINARY INJUNCTION

On August 2, 2023, Barrett filed a motion for a preliminary injunction. He explains that he suffers from post-traumatic stress disorder (PTSD) from having been shot multiple times. According to Barrett, loud noises and being "touched from the blindside" startle him and often cause him to go into a "flight or fight aggressive mode." Barrett explains that, despite psychological services and officers being aware of this, they continue to place him in segregation

4

next to another inmate who continually bangs on his door, wall, and shower and smears feces all over his door and vent so that Barrett has to inhale it all day. Barrett also asserts that officers intentionally bang the trap in his cell door to startle him, interfere with his legal mail, and ignore or deny his requests to be kept separate from certain officers. Barrett explains that he cannot receive needed treatment at the Wisconsin Resource Center because he will not be considered for transfer unless he is in general population. Barrett asks the Court to transfer him to another institution that can offer him treatment for his trauma and/or order Green Bay Correctional staff to stop harassing him, stop interfering with his access to the Court, and stop interfering with the treatment he receives from psychological services.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). A preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying complaint and deals with a matter presented in that underlying complaint. *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) (citations omitted)); *see Peace v. Pollard*, Case No. 15-cv-481, 2017 WL 564016 at *1 (E.D. Wis. Feb. 10, 2017) (citations omitted). In the context of prisoner litigation, the scope of the Court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act (PLRA). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and

5

discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The Court will deny Barrett's motion for a preliminary injunction for a couple of reasons. First, the allegations in his amended complaint that prison staff refused to contact psychological services do not overlap with the allegations in his motion for a preliminary injunction that officers constantly harass him with loud noises, have placed him in a cell next to a disruptive inmate, interfere with the delivery of his legal mail, and refuse to transfer him to an institution that can offer him mental health treatment. Given that the matters he raises in his amended complaint differ from the matters he raises in his motion for preliminary injunction, granting the relief Barrett seeks in his motion would be inappropriate. Next, the relief Barrett seeks—a transfer to a new institution, an order regarding his psychological treatment, and an order regarding staffing decisions—is far beyond the Court's authority and is not narrowly tailored to address the alleged misconduct. As noted, prison officials have broad authority to manage their institutions. This authority includes determining which institution an inmate should be housed in and the treatment and programming an inmate needs and is entitled to receive. The Court lacks the expertise to make decisions such as these and so nearly always defers to prison officials' judgment on these matters. Accordingly, the Court will deny Barrett's motion for a preliminary injunction.

If Barrett believes staff are intentionally harassing him or that he is being denied necessary treatment or that he has been improperly placed in segregation,[2] he should raise his concerns through the inmate complaint review system. If he is not satisfied with the response after fully

---

[2] Barrett requests to be placed in the general population because he will not be considered for transfer to the Wisconsin Resource Center if he is in disciplinary segregation. It appears that Barrett is serving a "lengthy [disciplinary segregation] time for a brutal assault on another inmate." Dkt. No. 24-1 at 17.

6

exhausting the available administrative remedies, he may initiate a lawsuit. The Court also acknowledges Barrett's concerns that officers are interfering with his legal mail, but the Court has had no recent issues communicating with Barrett and has received six filings from him in less than a month, suggesting he is able to communicate with the Court. The Court reminds Barrett to closely follow the rules and policies for sending and receiving mail.

**IT IS THEREFORE ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Barrett's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Montrel Bridges, Rachel Matushak, CO Spencer, Sgt Gregory Friedel, Michael Neveu, and Jay VanLanen.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Montrel Bridges, Rachel Matushak, CO Spencer, Sgt Gregory Friedel, Michael Neveu, and Jay VanLanen shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that Barrett's motion for a preliminary injunction (Dkt. No. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Green Bay, Wisconsin this 15th day of August, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

7